UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOROTHY WHITAKER

                Plaintiff,

    v.                                                                  Case No. 1:18-cv-1046

ALEX M. AZAR II, SECRETARY,
U.S. Department of Health and Human Services

                Defendant.

**COMPLAINT FOR TITLE VII DISCRIMINATION AND RETALIATION**

    Plaintiff Dorothy Whitaker ("Ms. Whitaker"), by and through her attorney Trent A. Howell, Esq, as and for her Complaint against Defendant Alex M. Azar II, Secretary, U.S. Department of Health and Human Services, alleges as follows:

NATURE OF CLAIMS

    1.    This is a civil action for declaratory and equitable relief as well as monetary damages brought by Ms. Whitaker in response to Defendant's violations of her civil rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981a for relief from unlawful discrimination on account of Ms. Whitaker race (African American), color (black), and prior protected activity (opposition and participation).

    2.    Ms. Whitaker, a former employee of the U.S. Department of Health and Human Services, brings this action to seek redress for Defendant's deliberate acts of: (1) race and color discrimination, and (2) promotion of a hostile work environment.

    3.    Defendant discriminated against Plaintiff on the above-referenced bases and subjected her to a hostile work environment during the relevant time period.

## JURISDICTION

4. This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

5. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

6. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of New Mexico, and occurred in the District of New Mexico. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id*.

## PARTIES

7. Ms. Whitaker is a citizen of the United States and resides and is domiciled in the County of Baltimore, in Catonsville, Maryland.

8. Ms. Whitaker is a member of a protected class based upon her race (African American), Color (black) and prior protected activity (participation and opposition activity).

9. The Department of Health and Human Services is federal executive agency of the United States Government, and the current secretary is Alex M. Azar, II. Secretary Alazar is being sued in his official capacity as the Secretary of the United States Department of Health and Human Services.

10. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff has exhausted all of his administrative remedies.

12. Ms. Whitaker timely filed an informal complaint of discrimination within forty-five (45) days of her termination, which is also referred to as making timely EEO counselor contact.

13. Ms. Whitaker subsequently received a notice of right to file a formal complaint, and timely filed her formal EEO complaint within fifteen (15) days.

14. Following an investigation, Ms. Whitaker requested a hearing before an EEOC Administrative Judge. The matter proceeded to a hearing and the Administrative Judge found in favor of the Agency following the hearing.

15. The Agency subsequently issued a Final Agency Decision, which was received on August 14, 2018 via email, and August 20, 2018 via mail.[1]

16. The instant Complaint is filed within ninety (90) days from either date of receipt.

## FACTUAL ALLEGATIONS

17. On August 15, 2014, Ms. Whitaker was terminated without explanation from her position with the Department of Health and Human Services (HHS), Indian Health Service (HIS) ("Agency").

---

[1] Plaintiff filed a Notice of Appeal with the EEOC's Office of Federal Operations, but it was after the filing deadline and does not toll the limitations period for this Complaint.

18. She was the only black anesthesia provider in the anesthesia department at Gallup Indian Medical Center (GIMC).

19. Her termination letter did not list any specific reason for her termination.

20. She had never previously been counseled that her work performance or conduct was deficient in any respect.

21. Approximately one (1) month before she was terminated, Ms. Whitaker was issued a mid-year progress review. This progress review indicated that Ms. Whitaker had "achieved expected results," and there was no notation that improvement was needed in even one critical element.

22. On August 25, 2014, ten (10) days after her termination, Ms. Whitaker was issued a Performance Appraisal, which rated her as "4" out of "5", designating "achieved more than excepted results."

23. It was not until five (5) months later, in January 2015, that Ms. Whitaker's second line supervisor, Dr. Loretta Christensen ("Dr. Christensen") would alleged that Ms. Whitaker was terminated for demanding excessive breaks, not getting along with colleagues, and leaving a patient unattended in the operating room (OR). There was not a single contemporaneous document from Ms. Whitaker's first or second line supervisor while Ms. Whitaker was employed indicating that her performance or conduct was deficient in any respect.

24. Ms. Whitaker's first line supervisor, Dr. Eugenio Rivera, affirmed in sworn testimony that race probably played a role in Ms. Whitaker's termination, and that had Ms. Whitaker not been harassed and ignored by her non-black colleagues, the alleged issues used as the basis for her termination would never have occurred.

25. During Ms. Whitaker's time at GIMC, she was isolated and ignored by her peers, referred to as a "chocolate doll," endured multiple instances of the word "nigger" being used in her presence, and was otherwise subjected to repeated racially harassing and insensitive comments. Her numerous complaints received no response from management. Her final complaint was a written complaint to her second line supervisor, Dr. Christensen, in which Ms. Whitaker complained of an ongoing "hostile work environment." Two (2) weeks later, Dr. Christensen terminated Ms. Whitaker's employment with the Agency.

26. Ms. Whitaker's race is African American.

27. Ms. Whitaker's color is Black.

28. Ms. Whitaker was employed from January 12, 2014 through August 15, 2014 as a Certified Registered Nurse Anesthetist (CRNA), GS-0610-13, at Gallup Indian Medical Center (GIMC) ("the Agency").

29. Prior to her civilian employment with the Federal Government, Ms. Whitaker had served honorably in the Michigan Air Force National Guard, serving as a CRNA and obtaining the rank of Captain. She then worked in private practice from the time period she was honorably discharged from the military, through the time she commenced employment with the Agency. At the time she became employed with the Agency, she had approximately thirty (30) years of experience as a CRNA.

30. Even before she was hired, it became clear that she was not welcome at the Agency. For example, when Ms. Whitaker was introduced to Dr. Gonzalez on a pre-hire visit, he looked at Ms. Whitaker and then closed his eyes without acknowledging or responding to her.

31. After Ms. Whitaker started, a contract nurse anesthetist, Ms. Cynthia Hamilton, repeatedly harassed Ms. Whitaker to attempt to get her to quit her job. Ms. Hamilton would repeatedly state to Ms. Whitaker, "Why are you here?"

32. Ms. Whitaker did not have a single adverse patient outcome while employed at GIMC.

33. Ms. Whitaker would often offer breaks to her non-black colleagues, but they would not reciprocate by offering breaks to her. Indeed, her colleagues would refuse to speak to her. If they had to communicate with her, they would pass a written note to Dr. Rivera, who would then pass the note to Ms. Whitaker. When Ms. Whitaker attempted to speak with her colleagues, they would turn their backs.

34. Ms. Whitaker complained to management that there was "a lot of racist comments being made" and "a lot of racist undertone here."

35. On or about August 15, 2014, Ms. Whitaker was terminated during her probationary period without explanation.

36. In addition to Ms. Whitaker, there were several anesthesia providers employed at GIMC for at least some of Ms. Whitaker's tenure there. A non-exhaustive list of such providers includes, but is not necessarily limited to Daria Jones, CRNA, Dr. Rivera, Dr. Juan Rossini, and Dr. Herbert Gonzalez. The anesthesia department also included contractor Dr. Jeff Semler.

37. On or about March 17 or 18, 2014 the Agency arranged for a consultant, Kevin Miller ("Mr. Miller") to lead a workshop on how to improve peer relationships.

38. In or around May 2014, Irma Rivera (Hispanic, medium complexion), Nurse, called Ms. Whitaker a "chocolate doll."

6

39. On or about June 14, 2014, Dr. Ynes Bruckner, Cardiologist, (mixed race; white) commented to Ms. Whitaker that she (Dr. Bruckner) had a black nose."

40. Dr. Bruckner further relayed how she was perceived as Black as a child due to her curly hair.

41. Ms. Whitaker was issued an HHS Employee Performance Plan Progress Review on July 2, 2014 by Dr. Rivera. Dr. Rivera did not provide any written narrative for Ms. Whitaker's Progress Review. Dr. Rivera issued Ms. Whitaker her final summary performance rating on August 25, 2014, wherein Ms. Whitaker received a "4" out of "5", which is "Achieved More than Expected Results (AM)"

42. Ms. Whitaker complained to Dr. Rivera both verbally and in writing, that she was being subjected to a hostile work environment, and had complained to Dr. Rivera regarding racially offensive comments made by a guest speaker, Mr. Miller. Rivera took no corrective action regarding Ms. Whitaker's complaint of racially offensive comments.

43. Dr. Rivera never once advised Ms. Whitaker that she was in danger of not passing her probationary period. He never issued Ms. Whitaker any written letters of counseling indicating that her performance or conduct were deficient. Dr. Rivera never once provided any feedback of information to Ms. Whitaker in writing about steps she needed to take to improve her performance or conduct.

44. Dr. Rivera was the rating official for Ms. Whitaker's mid-year progress review and found that Ms. Whitaker had "achieved expected results" for all of her performance elements related to anesthesia service for this mid-year review.

45. On August 25, 2014, ten (10) days after Ms. Whitaker was terminated, Dr. Rivera issued Ms. Whitaker a final performance rating of "Level 4", which is achieved more than expected results.

46. Ms. Whitaker was the only black employee in the anesthesia department and Dr. Rivera believed she was being harassed by the non-black anesthesia providers. The non-black anesthesia providers would turn their back to Ms. Whitaker and ignore her. They treated Ms. Whitaker like thy were disgusted with her.

47. Dr. Rivera he never issued any letters of counseling or discipline to the employees who were harassing Ms. Whitaker. Dr. Rivera spoke with Human Resources employee Pauline Holona to seek guidance on how to address the harassment to which Ms. Whitaker was being subjected, and Ms. Holona told him that she believed the harassment "probably was related to [Ms. Whitaker's] race."

48. Dr. Christensen was the reviewing official on Ms. Whitaker's August 25, 2014 final evaluation, and approved of Ms. Whitaker's rating of "4" out of "5", which is "achieved more than expected results" or "AM". The narrative accompanying this rating provides:

> Demonstrates the ability to perform assessments upon presentation to the clinical area, triage appropriately, and take immediate measures according to written standard of care and standing orders as needed. Obtain appropriate patient information regarding pre-hospital care, health history, and physical assessment. Document and reports on all essential information for the continuum of appropriate quality patient care. Prioritizes to maintain a continuous and organized smooth flow of patient care. Completes all documentation according to the criteria established by department policies and standard of care. Provides Anesthesia care to surgical patients before during and after surgery and completes documentation of patient records, forms and plan of care. Administers prescribed medications, IV fluids, and blood products according to the five rights of medication administration as well as hospital policy and standards of practice. Administration of anesthesia to patients in the operating room.

49. On July 28, 2014, Dr. Christensen received an email from Ms. Whitaker complaining of a hostile work environment. Dr. Christensen never issued any counselings or otherwise directed Ms. Whitaker's harassers to cease their behavior.

50. In February 2014, Kathy Jo, Surgical Technician, referred to the African American physicians working in the hospital as "sistas" and "brothas." Ms. Whitaker made no comments or reference to race that would have reasonably prompted this comment from Ms. Jo.

51. Nurse Mauricio Mota, who is not black, would routinely use the word "Nigga" in Ms. Whitaker's presence, including instances in April 2014. Ms. Whitaker reported Mr. Mota's repeated use of the "n" word to Dr. Rivera. Dr. Rivera responded, "Well, he shouldn't be doing that, but he's a really good guy and you can trust him." Dr. Rivera took no preventative action whatsoever.

52. In March of 2014, a relationship building workshop occurred where the presenter stood directly over Ms. Whitaker and stated: "People should not be playing the race card to get out of doing their job. A lot of people got EEO complaints to prevent their supervisors from writing them up for not doing their job and people need to not play the race card, they need to just do their job."

53. Ms. Whitaker looked to her supervisors to see if they would take action and, when they did not, she raised her hand and said "You know, I feel that comment is very offensive." Ms. Whitaker subsequently followed up with an email on which Dr. Rivera was cc'd. Agency management took no action to correct or condemn Mr. Miller's comments.

54. Nurse Eleanor Andy, told Ms. Whitaker, without prompt or invitation, that her grandchildren attended school with a black girl and that "nobody liked the black girl and she would

get beat up a lot . . ..” She added that her grandchildren would cry every time they looked at a black person.

55. On another instance, Nurse Irma Rivera told Ms. Whitaker, "you look like a chocolate doll."

56. Dr. Inez Bruckner told Ms. Whitaker that Dr. Bruckner used to be accused of appearing black, which hurt Dr. Bruckner's feelings. Accordingly, her brother would fight people for calling her black. Dr. Bruckner would pull at her own hair and nose and say "I have a black nose."

57. All of the racial comments were unwelcome, harassing and offensive. Ms. Whitaker reported the offensive comments by Mr. Miller, the repeated the use of the word "N" word by Mr. Mota, and the offensive comments by Ms. Andy to her first line supervisor, Dr. Rivera. No corrective measures were taken.

58. Whitaker had not engaged in any deficient conduct, performance, or behavior of any kind which would have warranted her removal from federal civil service.

AS AND FOR A FIRST CAUSE OF ACTION

*Race and Color Discrimination*

59. Whitaker incorporates and realleges paragraphs 1 through 58 as if set forth herein.

60. Defendant, through its agents, engaged in a pattern of race and color discrimination by subjecting Ms. Whitaker to unwelcome harassment, intimidation, and discrimination based upon her race and color, creating a hostile work environment in violation of Title VII includling, but not limited to:

- In or around February 2014, Kathy Jo (Navajo / Brown), O.R. Technician, referred to the African American physicians working in the hospital as "sistas and a brotha." Ms. Whitaker

made no comments or reference to race that would have reasonably prompted this comment from Ms. Jo.

- On or about March 17 or 18, 2014 Mr. Miller warned Ms. Whitaker and approximately fifty (50) other Agency employees that they needed to watch out for people who "play the race card" and participate in protected EEO activity to avoid doing their work. Mr. Miller explicitly advised the employees, "[d]on't use the race card." Management took no response to these comments despite being aware.

- On March 20, 2016, Mr. Miller emailed Ms. Whitaker and advised her that even where there is "actual discrimination" it is the victims of discrimination who are responsible for "holding themselves back in performance and potential by blaming others." Mr. Miller then singled out the "blacks" as a specific race that needed to "take more responsibility" stating, "a number of black leaders, as you know, are being very hard-hitting telling blacks to quit this and take more responsibility as fathers and leaders." Management was aware of this comment but took no response.

- In or around March or April 2014, Eleanor Andy (Native American / Brown), Nurse, told Ms. Whitaker that African Americans made her grandchildren so upset that they would cry simply by looking at an African American individual. Ms. Andy further advised Ms. Whitaker that no one liked the Black girl in her granddaughter's class so the kids would "always beat her up," referring to the Black girl. Ms. Whitaker reported this to management, but Ms. Whitaker's concerns were dismissed and no preventative or corrective measures were taken.

- In April 2014, Mr. Mota used the word "Nigga" several times in a conversation with Ms. Whitaker. Mr. Mota explained that, while he was not black or African-American, he had

- "black friends" and would call them "Nigga . . . as a form of brotherhood." Ms. Whitaker had not brought up the topic of race with Mr. Mota, and reported his comments to management. No preventative or corrective measures were taken.

- In or around April 2014, Mr. Mota told Ms. Whitaker how upset his father was when he once "brought a Black girl home." Ms. Whitaker had not brought up the topic of race with Mr. Mota, and reported his comments to management. No preventative or corrective measures were taken.

- In or around April 2014, Mr. Mota showed Ms. Whitaker a group of text messages containing repeated uses of the word "nigga." Ms. Whitaker had not brought up the topic of race with Mr. Mota, and reported his comments to management. No preventative or corrective measures were taken. Rather, Dr. Rivera responded, "Mauricio is a nice guy, and you can trust him."

- In or around May 2014, Irma Rivera, Nurse, called Ms. Whitaker a "chocolate doll."

- On June 14, 2014, Dr. Ynes Bruckner, Cardiologist, was eating breakfast with Ms. Whitaker.  During this breakfast, Dr. Bruckner pulled at the sides of her nose and exclaimed to Ms. Whitaker that she (Dr. Bruckner) had a black nose." Dr. Bruckner further relayed how she was accused of being Black as a child due to her curly hair, which often resulted in fights.

- In or around July 2014, while walking to the parking lot, Ms. Andy spoke to Ms. Whitaker and began to make a statement about African Americans in general, stating "you people . . .".  Given Ms. Andy's previous racist remarks, Ms. Whitaker stopped Ms. Andy and told her that she had "had enough" of Ms. Andy's racist remarks.

- In or around July 2014, Ms. Whitaker again complained to Dr. Rivera and Dr. Christensen that she was being subjected to a hostile work environment. Dr. Christensen responded that she would not intervene and advised Ms. Whitaker that "the personal relationships with your colleagues and co-workers is your responsibility to develop." Ms. Whitaker was summarily terminated without explanation just weeks later.

61. Defendant's violated Title VII when it terminated Ms. Whitaker's employment due to her race and color.

62. At all times material hereto responsible management employees of Defendant had actual and constructive knowledge of the conduct described above.

63. Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise reprimand the conduct, acts, and failures of its employees.

64. Defendant failed their duty to take reasonable and necessary steps to eliminate discriminatory harassment from the workplace and prevent it from occurring in the future.

65. As a direct and proximate cause of Defendant's willful, knowing and intentional discrimination and retaliation against Ms. Whitaker, she has suffered and will continue to suffer pain and suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, and other incidental expenses. Ms. Whitaker is entitled to general and compensatory damages in an amount to be proven at trial.

66. As a further and proximate result of Defendant' s violations of Title VII, Ms. Whitaker has been compelled to retain legal services in an effort to enforce the terms of her employment relationship with Defendant, and has thereby incurred and will continue to incur legal fees and costs, the full extent of which is yet to be known.

## AS AND FOR A SECOND CAUSE OF ACTION

*Unlawful Retaliation*

67. Ms. Whitaker repeats and realleges by reference paragraphs 1 through 66 as if set forth herein.

68. Defendant engaged in and permitted a pattern of illegal retaliation in violation of Title VII and failed to take any remedial action whatsoever with regards to Ms. Whitaker's complaints.

69. Plaintiff in good faith complained to Defendant of discrimination and harassment in the workplace. By protesting the race-based harassment and hostile conditions of her workplace, Plaintiff engaged in a protected activity under Title VII.

70. That there was a causal connection between but for Plaintiff's engagement in a protected activity and the retaliation Plaintiff suffered.

71. As a direct and proximate cause of Defendant's willful, knowing and intentional discrimination and retaliation Ms. Whitaker has suffered and will continue to suffer pain and suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, and other incidental expenses.

72. As a result of Defendant's discrimination and retaliation in violation of Title VII, Ms. Whitaker has been damaged in an amount to be determined by a jury at the time of trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Whitaker hereby demands trial by jury of all issues so triable at law.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Ms. Whitaker demands judgment as follows:

A. Declare that the actions, conduct and practices of Defendant complained of herein are in direct violation of the laws of the United States;

B. Issue an injunction against Defendant from engaging in the acts complained of herein;

C. Grant Ms. Whitaker an award of damages to be determined at trial plus prejudgment interest to compensate Ms. Whitaker;

D. Award Ms. Whitaker an award of reasonable attorneys' fees; and,

E. Grant such other and further relief as the Court may deem proper.

Dated: November 9, 2018

Respectfully Submitted,
*-Electronically filed & signed-*
Attorney Trent A. Howell
P.O. Box 2304
Santa Fe, New Mexico  87504
trent@trentahowell.com
(505) 919-9158

*Counsel for Plaintiff Dorothy Whitaker*