UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOROTHY WHITAKER

      Plaintiff,

and                                       Case No. 1:18-cv-1046

TRENT A. HOWELL,

      Plaintiff-in-Intervention,

v.

ALEX M. AZAR II, SECRETARY,
U.S. Department of Health and Human Services

      Defendant,

## COMPLAINT-IN-INTERVENTION

Plaintiff Trent A. Howell ("Howell"), Plaintiff-Intervenor *pro se*, alleges as follows:

### NATURE OF CLAIMS

1. This is a civil action for declaratory, equitable, and contractual relief by Attorney Howell to enforce his Charging Lien ("Lien") against funds Defendant U.S. Department of Health and Human Services ("HHS") owes its former employee, Plaintiff Dorothy Whitaker ("Whitaker"), under a voluntary settlement Howell obtained for Whitaker on underlying Title VII and § 1981a claims arising from HHS's August 15, 2014 termination of her employment. *See Clerk's Minutes for Settlement Conference on July 16, 2021* [Doc. 72].

### JURISDICTION

2. This Court has jurisdiction over the original dispute ("*Whitaker v. HHS*") pursuant to 28 U.S.C. § 1331 and §1343, as it asserts claims under the Constitution, laws, or treaties of the United States, including Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42

**PROPOSED COMPLAINT-IN-INTERVENTION**

U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a.

3. This Court has jurisdiction to declare and enforce rights and duties of the parties and Howell vis-à-vis the Lien and settlement (negotiated in a court-facilitated conference in this Court) pursuant to 28 U.S.C. § 1367, as well as the Court's ancillary enforcement jurisdiction based on its inherent powers rooted in the common law. *See Garrick v. Weaver*, 888 F.2d 687, 690 (10th Cir.1989) ("It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.'").

## VENUE

4. Venue is appropriate under 28 U.S.C. § 1391, because a substantial part of Whitaker's actual employment and performance of job duties with HHS; HHS actions and employment practices complained of by Whitaker; operations of HHS, an Agency of the federal government; the retention of Howell by Whitaker under a written Engagement Letter dated November 8, 2018, *see Exhibit A* to this Complaint; Howell's performance under that Engagement Letter for two and one-half years litigating on Whitaker's behalf in the above-captioned matter; and the settlement actions of Whitaker, Howell, and HHS all occurred in the District of New Mexico.

5. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. 28 U.S.C. § 1391.

## PARTIES

6. Howell is a citizen of the United States and resides and is domiciled in the County of Santa Fe, in Santa Fe, New Mexico.

7. Whitaker is a citizen of the United States and resides and is domiciled in the County

of Baltimore, in Catonsville, Maryland.

8. HHS is a federal executive agency of the United States Government, and the current secretary at the time the underlying (*Whitaker v. HHS*) matter was filed, was Alex M. Azar, II, sued in his official capacity as the Secretary of the United States Department of Health and Human Services.

## BACKGROUND

9. Since her August 2014 termination, Whitaker has spent seven years in employer investigation (since August 18, 2014, as HHS, Indian Health Service (IHS or "Agency"), File No. HHS-IHS-0406-2014), administrative process (since 2015, as EEOC Case No. 540-2015-00142X), and litigation (since November 9, 2018, when Howell filed the *Complaint* [Doc. 1]).

10. In the EEOC process, Whitaker and Agency had extended proceedings, including written discovery and a two-day evidentiary hearing in April 2018, resulting in a Final Agency Decision delivered to Plaintiff on or about August 14, 2018.

11. For the EEOC process, Whitaker hired an international law firm, Tully Rinckey, PLLC ("Tully Firm"), whom she paid large retainers and agreed to pay by the hour at rates from $180 to $600 per hour. Her primary attorney at Tully Firm was David A. Fallon, who entered appearance for Whitaker effective May 30, 2015. *See Exhibit B* to this Complaint.

12. After paying large sums to Tully Firm for more than three years and generating over 2,500 pages of material in that process, Whitaker did not manage either to negotiate a voluntary settlement or to prevail on any claim or receive any award. Instead, EEOC entered a Final Order *against* Whitaker, finding she "failed to prove by a preponderance of the evidence, that the Agency discriminated against or harassed her base on race, color or reprisal." *See Exhibit C* to this Complaint.

13. After thus pursuing her case unsuccessfully for four years, including three and one-half years represented by Tully Firm, Whitaker first contacted Howell on November 6, 2018.

14. Frustrated with her prior approach of paying attorneys by the hour and having no recovery to show for it, Whitaker sought and obtained from Howell a contingency representation.

15. Whitaker discussed this arrangement with Howell on November 6, 2018 in a 4 p.m. (MST) telephone call among herself and her prior attorney, Mr. Fallon of Tully Firm.

16. After the call, Howell memorialized the contingency arrangement in a written Engagement Letter, which he e-mailed to both Whitaker and her then-attorney, Mr. Fallon, at 5:15 p.m. on November 8, 2018. *See Exhibit A* to this Complaint

17. At 7:52 a.m. (EST) on November 9, 2018, Whitaker accepted the terms of the Engagement Letter and entered a binding written contract when she replied by e-mail:

> Mr. Howell, I accept the terms of the contract and will get signed copy off to you this evening.
>
> Dorothy

*Exhibit D* to this Complaint.

18. In their Engagement Letter, Whitaker agreed Howell is entitled to receive a contingency fee in a "Percentage" (Thirty-Five Percent) of any "recovery" (defined to include any "voluntary settlement before trial"), to recover any case costs, and at an appropriate time to file in this litigation a "Retaining Lien" and/or "Charging Lien" against any settlement proceeds to secure such fees and costs owed.

19. After being thus engaged, Howell filed the Title VII and § 1981a discrimination Complaint on behalf of Whitaker on November 9, 2018 and remained her sole counsel in *Whitaker v. HHS* until this Court's order of withdrawal, dated August 6, 2021.

20. In 1,002 days that he was Whitaker's attorney, Howell was required to and did

4
**PROPOSED COMPLAINT-IN-INTERVENTION**

analyze over 2,500 pages of material received at the outset of engagement; spend over 28 hours in telephone discussions of the case with Whitaker; prepare and file the originating *Complaint* [Doc. 1] on November 9, 2018; effect *Service of Process* and file a corresponding *Return* [Docs. 3 and 4]; receive and analyze an *Answer* [Doc. 7]; confer, research, analyze, and persuade Agency counsel on limitations-period issues arising from Tully Rinckey's handling; meet and confer with Agency counsel and prepare a *Joint Status Report and Provisional Discovery Plan of Parties* [Docs. 8, 9, 10, 11, 12, and 15]; receive and analyze Agency's *Rule 26 Initial Disclosures* [Doc. 13]; prepare and serve Whitaker's *Rule 26 Initial Disclosures* [Doc. 16]; prepare for and attend a Rule 16 Scheduling Conference [Doc. 17]; engage in written discovery [Doc. 22]; prepare and submit papers for, attend pre-conferences, and attend a first Court-ordered Settlement Conference held on November 13, 2019 [*see* Docs. 19, 20, 23, 24, and 25]; confer on and enter papers to adjust pretrial deadlines [Docs. 26, 27, 28, and 34]; prepare for and defend Agency's all-day deposition of Whitaker on January 10, 2020; confer on, receive and analyze, and reach stipulations on motions to seal and for protective order [Docs. 30, 31, 32, 33, and 35]; complete Discovery on February 3, 2020 [*see* Docs. 27 and 34]; research, prepare, and write, as well as receive, evaluate, and respond to extensive briefing as to Summary Judgment [Docs. 36, 37, 38, 39, 40, 41, 42, 43, 44, 48, 49, 50, 51, 52, 53, 56, 57, 58, 59, 60, and 61]; and receive, evaluate, research, and make pretrial preparations, contested motions, and submissions for a Civil Jury Trial in this matter, docketed for October 4, 2021 through October 8, 2021 [*see* Docs. 45, 46, 47, 54, 55, 62, 63, 64, 65, and 66].

21. In addition, after two and a half years of litigating for Whitaker, Howell had prosecuted her claims past summary judgment, securing for Whitaker an Order [Doc. 56] regarding summary judgment, which as later amended [Doc. 61], granted summary judgment

only in part, but left two Title VII claims for trial.

22. Thus, after completion of the discovery and summary-judgment stages in this matter, the Court set the remaining claims for a Civil Jury Trial to begin October 4, 2021.

23. The parties then agreed to a Rule 16 Follow-Up Settlement Conference before Judge Robbenhaar.

24. In preparation for the conference, Agency's counsel on July 8, 2021 e-mailed Howell a proposed form of Stipulation for Compromise Settlement and Release of Claims (the "Agency Release") to be executed if any settlement were reached. *Exhibit E* to this Complaint

25. Howell forwarded the Agency Release to Whitaker, via a 12:20 p.m. e-mail on Thursday, July 8, 2021. *Exhibit F* to this Complaint.

26. The Rule 16 Follow-Up Settlement Conference occurred on July 16, 2021, lasting seven hours and five minutes. [Doc. 72]

27. Through that Settlement Conference, Howell both helped Whitaker conclude her seven-year effort *and* satisfied the contingency in the Engagement Letter, by obtaining for Whitaker settlement terms to which she voluntarily consented on the court record. Further, while the Engagement Letter entitled Howell to a contingency fee of Thirty-Five Percent, as a gesture and accommodation attempting net Whitaker a higher amount, Howell verbally committed to reduce his fee to Thirty Percent, if that would make the gross settlement figure last offered by Agency acceptable to Whitaker. Howell explained and showed these figures to Whitaker with a spreadsheet breaking down all calculations and costs incurred in the case. *Exhibit G* to this Complaint. And with these explanations and commitments, Whitaker agreed to the settlement.

28. At conclusion of the July 16, 2021 Settlement Conference, Judge Robbenhaar on the record confirmed a settlement was made in the (nonconfidential) amount of $650,000.

6
**PROPOSED COMPLAINT-IN-INTERVENTION**

Whitaker on the record—with witnesses including Tiffany L. Walters and Roberto D. Ortega, Assistant United States Attorneys, as counsel for Agency—acknowledged being "unimpaired," "voluntarily partaking in" negotiations, and without being "forced or threatened" having entered settlement on terms and a form of release Judge Robbenhaar identified—the Agency Release. And Judge Robbenhaar directed the parties to submit closing documents within 30 days (by August 15, 2021) [Doc. 72].

29.     But afterwards—and despite those acknowledgements—from July 17, 2021 to July 30, 2021, Whitaker in communications with Howell:[1]

(a)     refused to sign the release she had accepted on July 16, 2021;

(b)     falsely claimed (in an e-mail at 5:49 p.m. on July 19, 2021) Howell had never shown her the release until after the Conference;[2]

---

[1]     For the reasons further set forth herein, based on the representations and allegations Whitaker made to the Court in the August 3, 2021 Status Conferences, as well as by Whitaker's e-mail disclosures to Agency counsel of other attorney-client communications she had with Howell, Howell reasonably believes the following disclosures are authorized under rules of ethics, because they are necessary:

    (2)     to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;

    (3)     to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services; [or]

    (5)     to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the lawyer's representation of the client [.]

New Mexico Rules of Professional Conduct, Rule 16-106(B)(2), (3), and (5) NMRA,

[2]     As noted, falsity of Whitaker's claim may be shown by Howell's e-mail of the Agency Release to Whitaker at 12:20 p.m. on Thursday, July 8, 2021—a week before the Settlement

**PROPOSED COMPLAINT-IN-INTERVENTION**

(c) outlandishly claimed the settlement agreement had some effects that would leave her "hundreds of thousands of dollars in debt" (which she thereafter refused to explain or substantiate);

(d) falsely claimed she had an appointment with a tax attorney, or unreasonably failed to keep that appointment, obtain or follow that attorney's advice, or inform Howell of that tax attorney's advice, if it was ever received;

(e) claimed Howell should have negotiated for terms of settlement that, in truth, are inapplicable or unavailable under the circumstances, and moreover were never matters Whitaker retained Howell to advise on, asked Howell to negotiate, or asked Magistrate Robbenhaar or Defendant to include as terms—such as diverting settlement proceeds into an unspecified 401(k); having proceeds paid under a Form W-2; characterizing the settlement as a physical injury and/or "medical" settlement; and having a "structured settlement to spread out tax liability," which in industry terms means having the proceeds paid out over a period of years;

(f) while making these claims, also failed to cite any good-faith basis to claim such arrangements:

    i. were ever requested of Howell,

---

Conference. *See Exhibit F* to this Complaint. Further, near the end of the Settlement Conference, Howell also reviewed the Release paragraph by paragraph with Whitaker <u>while Judge Robbenhaar was present</u>. This occurred before the parties ended negotiations and went on record to affirm settlement. After Howell's discussion of the Release with Whitaker, Judge Robbenhaar on the record specifically informed Whitaker the terms of settlement required acceptance of that form Release. And after both Howell's review of the Release with her and Judge Robbenhaar's statement that the Release had to be signed without modification, Whitaker on the record affirmed she had voluntarily entered the settlement.

**PROPOSED COMPLAINT-IN-INTERVENTION**

  ii.  were within his scope of engagement,

  iii.  were potentially applicable under the law or facts of her case,

  iv.  had or ever would have been agreed upon by Agency,

  v.  by being omitted from the settlement, had any impact reaching into "hundreds of thousands of dollars," or

  vi.  if negotiated, would have had material and otherwise unattainable tax effects;

(g) unreasonably refused to accept, to state rational grounds for rejecting, or to proceed on the information Howell subsequently obtained from Defendant's counsel on these matters (and conveyed to Whitaker in a July 23, 2021 e-mail, sent at 11:50 a.m.), which was that even if Whitaker had asked, Defendant's counsel was not authorized to agree to tax characterizations in a settlement, and as a result of the proceeds being payable out of the United States Judgment Fund, Defendant's counsel would have had no ability to agree to issue a W-2 for the settlement funds, to issue anything other than a Form 1099 as to the funds, or to do anything on Whitaker's behalf as to a 401(k) contribution; and [3]

(e) unreasonably failed thereafter to respond to Howell's communications and

---

[3] The primary points remain that Whitaker accepted—and never beforehand requested anything but—a settlement making no specification of tax treatment, "injury" or "medical" characterization, Forms W-2 or 1099, or 401(k) contributions. But even if Whitaker had negotiated for and obtained Defendant's consent in such terms, a settlement allocation is not binding on the IRS, and the IRS may disregard an agreement if the facts and circumstances indicate that the parties actually intended the payments to be made in compensation for different damages. *Robinson v. Comm'r*, 102 T.C. 116 (1994). Thus, this is yet another reason it is invalid for Whitaker to claim or to insinuate that omitting such topics from the settlement agreement has somehow decisively established the IRS will make detrimental (and otherwise legally avoidable) characterizations of the settlement proceeds.

requests for information and cooperation.

30. On July 30, 2021, in a direct communication with both Howell and Agency's counsel, Whitaker terminated Howell's legal services, by e-mail she (a resident of Maryland) sent at 11:41 p.m. in the evening on Friday, July 30, 2021. *See Exhibit H* to this Complaint. In the same e-mail, Whitaker made similarly outlandish and unexplained claims that "the 1099 settlement agreement [sic] … provides me little to no benefit" and is "a further assault against me." And yet in concluding the e-mail, Whitaker advised Agency's counsel, "I still want to resolve this case and I am willing to work towards doing so."

31. With the latter actions and communication, Whitaker confirmed Howell's growing suspicion that despite having fully, knowingly, and voluntarily reached and agreed to terms in the July 16, 2021 Follow-Up Settlement Conference, Whitaker by her actions from July 17, 2021 through July 30, 2021 was simply, clumsily, and in bad faith attempting to cut Howell out of his fully-earned contingency fee under the Engagement Letter.

32. Consequently, in a string of e-mailed communications beginning on July 31, 2021, Howell reasonably sought to confirm with Whitaker if she:

(a) was asking for Howell to withdraw as counsel;

(b) consented to or opposed Howell's withdrawal; and

(c) was disputing (and/or continuing to dispute):

    i. a settlement had been reached on July 16, 2021;

    ii. she admitted on the court record voluntarily entering the settlement;

    iii. she had, in truth, received the Agency Release over a week before and reviewed it before and during the Settlement Conference;

    iv. Howell's entitlement to the contingency fee under the Engagement Letter;

  v.  the amount of the fee Howell had earned ($194,624.48) and the costs he had incurred ($1,251.74), which totaled $195,876.22;

  vi.  Howell's right to file a Charging Lien to secure his receipt of earned fees and incurred costs; and

  vii.  Howell's right to a Court Order enforcing the same Charging Lien.

33. However, from July 30, 2021 through the morning of August 3, 2021, Whitaker refused to respond to any of Howell's communications seeking to confirm such details.

34. In turn, on July 31, 2021, Howell filed his Notice and Claim of Attorney's Charging Lien [Doc. 73].

35. Over the next seven days, Whitaker continued failing to communicate or cooperate in completing the settlement, thus causing Howell, Agency, and the Court to prepare for and conduct several more proceedings and filings not otherwise attending the mere closing of an already-settled claim in federal court. [Docs. 74, 75, 76, and 77].

36. And in successive Status Conferences on August 5, 2021 (at 11 a.m. before Judge Robbenhaar and at 3 p.m. before United States District Judge Kenneth Gonzales), Whitaker repeated false claims that:

 a. Howell had not acted in her interest;

 b. she had been pressured by not only Howell but also by Judge Robbenhaar to enter the settlement; and

 c. she had not seen Defendant's form of release prior to the Settlement Conference or reviewed its terms during the Settlement Conference.

37. However, because Whitaker in these conferences finally confirmed she was consenting, Howell filed his motion to withdraw as her counsel [Docs. 78 and 80], which this

11
**PROPOSED COMPLAINT-IN-INTERVENTION**

Court found well-taken and granted, entering an order allowing the withdrawal of Howell as counsel for Whitaker on August 6, 2021 [Doc. 82].

## AS AND FOR A FIRST CAUSE OF ACTION

38. Howell repeats and realleges by reference paragraphs 1 through 37 as if set forth herein.

39. By their e-mail communications on November 8, 2018 and November 9, 2018, Howell and Whitaker entered a written, binding contract in New Mexico in the form of the Engagement Letter, Exhibit A to this Complaint, by which they agreed Howell would represent Whitaker on a contingency basis, earning a fee in the amount of Thirty-Five Percent of any voluntary settlement occurring before a Notice of Appeal, if any, had been filed in the case.

40. Thirty-Five Percent is a typical and reasonable contingency percentage to apply in an employment-discrimination case.

41. Howell faithfully performed under that contract.

42. By obtaining settlement terms Whitaker voluntarily accepted on the court record on July 16, 2021, Howell obtained a "recovery" for Whitaker in the amount of $650,000.

43. While the Thirty-Five Percent figure stipulated in the Engagement Letter would have also been valid and enforceable, the fee being sought in this Complaint-in-Intervention is even moreso, because in the Settlement Conference, Howell agreed with Whitaker to reduce his fee to Thirty Percent for purposes of reaching a settlement Whitaker would accept.

44. By obtaining a sizeable recovery Whitaker voluntarily accepted on the court record, Howell satisfied the contingency defined in the Engagement Letter as sufficient to entitle him to be paid a percentage of the settlement proceeds.

45. Under New Mexico law, a plaintiff's attorney is entitled to a secured interest in

12
**PROPOSED COMPLAINT-IN-INTERVENTION**

funds he successfully obtains for his client:

> In New Mexico, the attorney's charging lien "has its origin in the common law, and is governed by equitable principles." *Northern Pueblos Enters. v. Montgomery*, 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982) (citing *Prichard v. Fulmer*, 22 N.M. 134, 139, 159 P. 39, 40 (1916); *accord Rhodes v. Martinez*, 1996-NMCA-096, ¶ 5, 122 N.M. 439, 925 P.2d 1201. It is an attorney's right to "recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same." *Prichard*, 22 N.M. at 140, 159 P. at 41. The attorney's charging lien is intended "to protect attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand." *Id*. at 145, 159 P. at 42; *see also Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514, 516 (Minn.1980) ("Historically the general theory behind the charging lien was that a successful plaintiff should not be permitted the whole of any judgment secured by the services of his attorney without paying for those services.").

*Cherpelis v. Cherpelis*, 1998-NMCA-079, ¶ 8, 125 N.M. 248, 959 P.2d 973, 975-976.

46. Correspondingly, in their written Engagement Letter, Howell stipulated and Whitaker agreed:

> **… Retaining and Charging Liens.** Client hereby agrees, if the matter yields a "Recovery," Attorney has and may assert a Retaining Lien against such proceeds for the amount of his unreimbursed interest under the terms of this Engagement Letter. In addition, Client hereby agrees, if Client maintains litigation or claims arising from or relating to the Engagement without Attorney as Client's counsel, Attorney has and may assert in any such litigation or claims a Charging Lien in the amount of his unreimbursed interest under the terms of this Engagement Letter.

*Exhibit A* to this Complaint.

47. This agreement clearly communicated and established Howell was being given a lien against any money or property that may come due to Whitaker as a result of a settlement.

48. When Whitaker showed signs of intending to cut Howell out of the settlement, Howell properly and timely perfected this lien by filing his Notice and Claim of Attorney's Charging Lien [Doc. 73] on July 31, 2021, thereby giving proper notice to all appropriate

parties—including Whitaker, Agency, and this Court.

49. For the reasons stated, Howell is entitled to Order Enforcing Attorney's Charging Lien, and providing that for his protection, Agency will withhold from settlement proceeds otherwise payable to Whitaker an amount of $195,876.22 for direct payment to Howell (and/or through deposit and disbursement through the Court registry) in satisfaction of his Attorney's Charging Lien.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Howell demands judgment as follows:

A. Declare that Howell has and is entitled to due enforcement of his Attorney's Charging Lien in the amount of $195,876.22;

B. Issue an injunction against Agency from disbursing such amounts to Whitaker;

C. Award Howell an award of reasonable attorneys' fees and costs; and,

D. Grant such other and further relief as the Court may deem proper.

Dated: August 12, 2021

Respectfully Submitted,
*-Electronically filed & signed-*
Attorney Trent A. Howell
P.O. Box 2304
Santa Fe, New Mexico 87504
trent@trentahowell.com
(505) 919-9158

*Former/Withdrawn Counsel for Plaintiff*